ORIGINAL

UNITED STATES DISTRICT COURT
Eastern DISTRICT OF NEW YORK

GERZHGORIN

Write the full name of each plaintiff.

-against-

SELFHELP COMMUNITY SERVICES INC

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

CV 18-4344

(Include case number if one has been assigned)

DeARCY HALL, J.

KUO, M.J.

Do you want a jury trial?
☒ Yes   ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.



RECEIVED AUG 01 2018 PRO SE OFFICE

Rev. 3/24/17

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Oleg | | Gerzhgorin |
|---|---|---|
| First Name | Middle Initial | Last Name |

**1818 Ave. L Apt. 4F**
Street Address

| Kings, Brooklyn | NY | 11230 |
|---|---|---|
| County, City | State | Zip Code |

**(718) 913 6846**            **omgersh@yahoo.com**
Telephone Number              Email Address (if available)

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1: **Selfhelp CommunityServices Inc.**
Name

MAIN OFFICE

**520 8th Avenue,**
Address where defendant may be served

| New York | NY | 10018 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2: **RUSSIAN HOLOCAUST SURVIVORS PROGRAM** (WHERE I WORKED)
Name

**419 CHURCH AVE**
Address where defendant may be served

| KINGS, Brooklyn | NY | |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 3:**

_____
Name

_____
Address where defendant may be served

| County, City | State | Zip Code |

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**Russian Holocaust Survivors Program**
Name

**1818 Ave. L 4F**
Address

| Kings, Brooklyn | NY | 11218 |
| County, City | State | Zip Code |

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☒ religion: **Jewish** _____

☐ sex: _____

☐ national origin: _____

- ☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

- ☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: **1962**

- ☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

- ☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

- ☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

B. **Other Claims**

In addition to my federal claims listed above, I assert claims under:

- ☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

- ☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

- ☐ Other (may include other relevant federal, state, city, or county law):

    _____

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☐ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Oleg Gerzhgorin, an Orthodox Jew, a son of a Holocaust survivor, a Russian native speaker who extensively studied clinical implications and intergenerational transmission of trauma in families of Holocaust survivors and who denied a higher salary offer from another agency at the time of coming to Selfhelp on July 3, 2017 has been terminated three month later on October 17.
After his first "fresh look" email about lack of cultural sensitivity he was blamed in accusing management of cultural insensitivity and soon after was given a poor performance review in retaliation for giving constructive criticism.
Immediately after his second "fresh look" email he was discharged for "not fitting the program".

pls see attached =>

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

    When did you file your charge?  March 2018

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

    What is the date on the Notice?  May 8, 2018

    When did you receive the Notice?  May 15, 2018

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

back pay, front pay, compensatory damages suffered because of discrimination and retaliation for injury resulting from loss of current and prospective income, emotional distress, loss of reputation, costs and reasonable attorneys' fees incurred with this lawsuit, other damages and further relief as deemed just, that Selfhelp stop answering employment inquiries or alternatively provide Mr. Gerzhgorin with truthful letters of recommendation regarding the quality of his work while at Selfhelp.

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 7/5/18 8/1/18 | *Gerzhgorin* (signed) |
|---|---|
| Dated | Plaintiff's Signature |
| Oleg | Gerzhgorin |
| First Name / Middle Initial | Last Name |
| 1818 Ave. L Apt. 4F | |
| Street Address | |
| Brooklyn | NY / 11230 |
| County, City | State / Zip Code |
| (718) 913 6846 | OMGERSH@YAHOO.COM |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

| To: Oleg Gerzhgorin | From: New York District Office |
|---|---|
| 1818 Avenue L | 33 Whitehall Street |
| Apt. 4-F | 5th Floor |
| Brooklyn, NY 11230 | New York, NY 10004 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-02881 | Mabel Tso, Investigator | (212) 336-3762 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin Berry*

Kevin J. Berry,
District Director

MAY 08 2018
(Date Mailed)

Enclosures(s)

cc: Kevin T. Byrne
Vice President
**SELFHELP COMMUNITY SERVICES, INC.**
520-8th Avenue, 5th Floor
New York, NY 10018

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | |
|---|---|
| Mr. Kevin T. Byrne<br>Vice President<br>SELFHELP COMMUNITY SERVICES, INC.<br>520 8th Avenue, 5th Floor<br>New York, NY 10018 | **PERSON FILING CHARGE**<br><br>**Oleg Gerzhgorin**<br>THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s)<br>EEOC CHARGE NO.<br>**520-2018-02881** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)   [ ] The Equal Pay Act (EPA)   [ ] The Americans with Disabilities Act (ADA)

[X] The Age Discrimination in Employment Act (ADEA)   [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to
If you **DO NOT** wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Mabel Tso,
Investigator
EEOC Representative
Telephone (212) 336-3762

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**
**Fax: (212) 336-3625**

Enclosure(s): [X] Copy of Charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**
[ ] Race   [ ] Color   [ ] Sex   [X] Religion   [ ] National Origin   [X] Age   [ ] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

Addendum to Complaint, *Gerzhgorin v. Selfhelp Community Services*

1. The top executive Mr. Byrne, the program director Ms. Khachatryan and the social work supervisor Ms. Wooley who emphasized they are not Jewish created a "fit excuse" where Orthodox and observant Jews who are Russian native speakers, descendants of Holocaust survivors, highly educated, experienced and licensed (LMSW) social workers are still considered a bad cultural fit and either not hired or get fired after raising voice for their rights and rights of their clients - observant Jews.

2. Plaintiff Oleg Gerzhgorin, an Orthodox Jew, was hired by Selfhelp on 7/3/2017 and worked in a position of social worker at Russian Holocaust Survivors program before being terminated on 10/17/2017.

3. Mr. Gerzhgorin's first level supervisor was Fakhriniso Wooley, social work supervisor; his second level supervisor was Mariam Khachatryan, director of Russian Holocaust Survivors Program.

4. Upon arrival at the Selfhelp, Mr. Gerzhgorin immediately began doing superlative work. He quickly engaged with clients to build rapport, developed a working relationship with coworkers and supervisors, shared ideas on how to improve the program where social workers were supposed to provide case management, supportive counseling and financial aid to Holocaust survivors.

5. When Ms. Khachatryan asked Mr. Gerzhgorin to bring on board a new catering and a bakery for social events, he used his spare time to find these who were eager to provide more choices for Holocaust survivors at traditional "Coffee house" events (not only chicken bottoms with farfel as they used to have).

6. Also Mr. Gerzhgorin was asked by Ms. Khachatryan and Ms. Wooley to facilitate a discussion of Jewish traditions at VCS (virtual senior center) for home bound people, play saxophone at social events, teach clients and coworkers to play chess what was not a part of his responsibilities.

1

7. At list twice, Ms. Khachatryan encouraged Mr. Gerzhgorin by saying: "You are doing a great job" after he was putting in discretionary effort and volunteering to take on extra tasks and responsibilities.

8. Since being Mr. Gerzhgorin's supervisor, Ms. Wooley treated him differently from similarly situated employees like Sevinch Babajanova and Inessa Matevosyan who were not Jewish. She required Mr. Gerzhgorin to send her a carbon copy of all his email messages and often invited him to lengthy case supervision sessions which she conducted in her office behind closed doors.

9. Ms. Wooley did not ask other social workers to carbon-copy her on emails and had short supervision sessions with them with the door open.

10. Circa August 8, 2017, Mr. Gerzhgorin was criticized for not attending a non-kosher restaurant to celebrate Ms. Wooley's birthday, even though he emailed his heartfelt wishes in advance. Upon information and belief, his following the Jewish dietary laws of kashrut was ridiculed by supervisors and coworkers at such birthday parties taking place during regular business hours.

11. Circa September 14, 2017, Mr. Gerzhgorin notified Ms. Wooley that he was going to use his accrued vacation time to take Jewish holidays off. Ms. Wooley responded that the agency "recognizes" only High holidays and no employee allowed to take a day off on a "statistics day" when the entire department prepares a monthly statistical report. Mr. Gerzhgorin's request for days off was approved only after he emphasized that, as an observant Jew, he was prohibited to work during Jewish holidays and it was nonnegotiable.

12. Circa September 25, 2017, Mr. Gerzhgorin sent Ms. Wooley, who was supposed to hire musicians for social events, a "fresh look" email where he suggested that Jewish style music could be more appropriate during the period of Jewish holidays. As a former musician Mr. Gerzhgorin observed that music adds for the emotional state and many Holocaust survivors

attending traditional "coffeehouse" were feeling disconnected when so-called "Gypsy style music" sounded.

13. Circa September 26, 2017, Ms. Wooley called Mr. Gerzhgorin at her office to discuss his "fresh look" email. Mr. Gerzhgorin brought to her attention other examples of cultural insensitivity.

14. One of Mr. Gerzhgorin's clients Ms. Rakhil Minushkina has not been selected for a Berkshire Hills Eizenberg Camp summer retreat even though she applied on time. Instead, Ms. Wooley offered her a trip to a Russian ballet on Saturday. The client asked Mr. Gerzhgorin to notify Ms. Wooley that as an observant Jew she can't desecrate Shabbat.

15. Indeed, many trips were scheduled close to Jewish holidays when observant clients couldn't attend. Also, observant clients have been feeling ashamed about wearing kippahs during social events and kept them in pockets out of fear not to be invited next time.

16. Likewise, Ms. Wooley failed to instruct social workers on how to handle kosher food delivery, Jewish holidays, grief/loss/bereavement questions clients ask. In one instance the case worker Sevinch Babajanova went into discussion with her client about "benefits" of cremation, not even asking the client if he knew that cremating is against the Jewish law.

17. Rather than address the situation, Ms. Wooley stated that she was fed up with Mr. Gerzhgorin's complaints which in her opinion tended to undermine her authority and called Mr. Gerzhgorin to Ms. Khachatryan's office where he was blamed in accusing management of cultural insensitivity.

18. When Mr. Gerzhgorin recommended a well-known musician, who sings Hebrew and Israeli songs, Ms. Wooley called him "too religious" and accused Mr. Gerzhgorin in trying to promote his friend. Thus, Ms. Wooley purposefully misconstrued the actual content of Mr. Gerzhgorin's email ridiculing his intents to improve the program.

19. Ms. Khachatryan told Ms. Wooley pointing at Mr. Gerzhgorin that "everything should be documented." Ms. Khachatryan tended to use this phrase before taking adverse action against critical thinkers who decided on their own what is right and just, and it sounded as a threat of retaliation.

20. After Ms. Wooley left Ms. Khachatryan continued her monologue making biased comments about Holocaust survivors: "I am not Jewish…", "They lost their faith after the Holocaust…", "When someone fell and passed out during the coffeehouse event at Ave. M – they continued eating…", "They don't even know what Tu Bishvat is…", "They eat pork…"

21. Circa October 2, 2017, shortly after Mr. Gerzhgorin's "fresh look" email and a few months later after closely supervising his performance Ms. Wooley suddenly found "major issues" in his performance and sent Mr. Gerzhgorin an intimidating email criticizing him for promoting a person-centered approach by prioritizing tasks based on client's needs what had never been an issue before. Later Mr. Gerzhgorin was forced to remove culturally sensitive case notes from client's files and make more referrals without thorough psychosocial assessments. Thus, Ms. Wooley began documenting Mr. Gerzhgorin's "poor performance" shortly before his termination.

22. Circa October 10, 2017, Mr. Gerzhgorin brought Arba minim to a coffee house event which fell on the week of the Jewish holiday of Sukkot. Arba minim are four small plants considered the traditional symbols of Jewish unity as being relevant to Sukkot. Ms. Wooley didn't allow Mr. Gerzhgorin to communicate individually with each client stating, "they are not traditional" and "this thing is not a part of tradition." She followed Mr. Gerzhgorin from table to table recording his conversation with clients. When upon client's request, Mr. Gerzhgorin spoke into the microphone about meaning of Sukkot and Arba minim what symbolizes the importance of the unity of the people of Israel, clients clapped their hands.

23. Circa October 17, 2017, Mr. Gerzhgorin learned that Ms. Wooley left a misleading case note in Yusef Dobrinsky's file accusing Mr. Gerzhgorin in intentional delay of Starkey hearing aids referral without taking into consideration that the client had not fully recovered from ear infection. Ms. Wooley stated that Mr. Gerzhgorin "refused" to take the application which client brought to the social event. Ms. Wooley spread false information by deliberately holding back that Mr. Gerzhgorin communicated with Mr. Dobrinsky in front of Ms. Wooley during the last social event and she knew that the client had a portion of the application which a Starkey affiliated doctor were supposed to fill out during upcoming appointment. Thus, Ms. Wooley is deliberately intended to discredit plaintiff's qualification making him a victim of unlawful retaliation and reprisal for recent reports of discrimination based on religion.

24. On October 17, 2017 immediately following Mr. Gerzhgorin's second "fresh look at social work supervision" email Ms. Khachatryan discharged Mr. Gerzhgorin on a basis of being "not a good fit to the program." He was told to hand over his badge in front of his co-workers, escorted by Ms. Wooley to his desk and out of the building what didn't intend to preserve terminating employee's dignity. This procedure was extreme and outrageous and designed to cause the maximum impact of surprise and shock. Each of these episodes, individually and cumulatively, caused Mr. Gerzhgorin damage in the form of severe emotional distress, leaving him with feelings of tightness in his chest, sleepless, afraid for his future.

25. Circa October 17, 2017, defendant communicated to the rest of the company that the probation period has been reduced from 6 to 3 months and according to the new procedure all employment termination cases must be reviewed by a HR department.

26. Circa October 17, 2017 after being terminated Mr. Gerzhgorin requested a meeting with a vice president of HR Mr. Byrne to address lack of cultural sensitivity, person-centered approach at the program and the underlying issues that make Jewish clients and employees feel stigmatized

5

and discriminated. The meeting took place in November 2017 in vise president's office where Mr. Byrne advised Mr. Gerzhgorin to speak for himself and refused to give any reason for dismissal. Later he confirmed: "We don't think you were a good fit to the program." Defendant's stated reasons for the termination of employment are a pretext for unlawful discrimination based on religion and age.

27. Circa October 16, 2017, Mr. Gerzhgorin learned that since August when another social worker over 40 Larisa Tsekhanskaya has been fired, defendant hired two new social workers. All selectees were under 40. Shortly before Ms. Tsekhanskaya's termination her supervisor told her: "You are moving too slow. I didn't know that you are much older than you look." Mr. Gerzhgorin and Ms. Tsekhanskaya came on board in July 2017, they were the only non-supervisory licensed social workers (LMSW) at that time and they were over 40. Defendant engaged in a pattern of making employment decisions based upon the youth and appearance of employees in violation of their rights under Title VII, the ADEA. Defendant breaks law by firing older workers for young ones.

28. Defendant displays lack of professional vision and respect to clients' needs by not hiring or discharging descendants of Holocaust survivors who are highly educated, experienced and licensed social workers. Ms. Tsekhanskaya, an observant Jew and a descendant of Holocaust survivor, was terminated shortly after raising her voice about cultural approach in August 2017, one month later after coming on board.

29. Defendant shows protectionism and favoritism by hiring less educated and less experienced social workers, who have little or no knowledge of Jewish history, culture, traditions. Mikhail Radchenko, an Orthodox Jew, a descendant of a Holocaust survivor, a native Russian speaker who applied for Social Worker/Community Worker MSW/BSW, Brooklyn, Bilingual-English/Russian position in September 2017 received an email from HR: "We enjoyed having the

6

opportunity to meet you and discuss your credentials. While we were most impressed, we have identified another candidate whose background and experience better meets the requirements for this job." Upon information and belief, "another candidate" is Gulnara, a girl from Azerbaijan and Russian is not her native language. She came to this country a few years ago, has little or no relevant experience, knowledge of the Holocaust, Jewish values and traditions. She has little knowledge about anti-Semitic prejudice and discrimination Holocaust survivors came through. She met with her now to be SW supervisor Ms. Wooley while in a graduate school.

30. Defendant ridicules Jewish values by criticizing kashrut observant employees for not attending non-kosher restaurants to celebrate supervisor's birthdays.

31. Defendant shows lack of cultural sensitivity by allowing bias and disparaging comments about Jews at a workplace. Ms. Khachatryan was overheard (by Mr. Gerzhgorin and co-workers) saying: "They lost their faith after the Holocaust", "Someone fell down and passed out during the coffeehouse event at Ave. M – they continued eating", "If you are a descendant of Holocaust survivors, you are not entitled to anything", "They eat pork…" Ms. Wooley was overheard saying: "They are not traditional", "We serve kosher food at social events only because they take place at a Jewish center." Another social worker Laimute Kavaliauskiene loudly stated: "They get divorced to get more benefits", "They used to complain in Soviet Union, now they complain here." On another instance when Ms. Kavaliauskiene talked to a social work intern, she made disparaging comments about Orthodox Jews: "They cheat on their wives because they are always pregnant," "They go to a Russian bathhouse and stare at women."

32. Upon information and belief, after Mr. Gerzhgorin's departure his former supervisors spread defamation that he was fired for actively searching another employment while at work causing Mr. Gerzhgorin further damage after his termination by injuring job opportunities for which he applied and will apply in future. Defendant knew that Mr. Gerzhgorin would be looking for a

new job after termination, however, has not provided him with separation agreement on how Selfhelp will respond to employment inquiries. The loss of future employment opportunities has caused Mr. Gerzhgorin current and future permanent damage to his career and reputation.