UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

OLEG GERZHGORIN,

                      Plaintiff,

        v.

SELFHELP COMMUNITY SERVICES, INC. and
RUSSIAN HOLOCAUST SURVIVORS
PROGRAM,

                      Defendants.

**MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION**

18-CV-04344 (LDH)(PK)

---

LASHANN DEARCY HALL, United States District Judge:

      Oleg Gerzhgorin ("Plaintiff"), proceeding pro se, filed the instant action against Selfhelp Community Services, Inc. ("Selfhelp") and Russian Holocaust Survivors Program ("RHSP") (collectively with Selfhelp, "Defendants") asserting claims for retaliation and discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL"), and discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the NYCHRL. Defendants move for summary judgment, seeking dismissal of the complaint in its entirety. (Defs.' Mot. Summ. J., ECF No. 38.) This Court referred the motion to Magistrate Judge Peggy Kuo who, on March 2, 2021, filed a report and recommendation (the "R&R") recommending that the Court grant Defendants' motion. (R&R, ECF No. 49.) Plaintiff timely filed objections. (Pl.'s Objs. to the R&R ("Pl.'s Objs."), ECF No. 52.)

1

## BACKGROUND

Magistrate Judge Kuo recounted the factual background and procedural history of this case, which the Court will not reproduce in full. (R&R at 1–17.) Defendant RHSP is one of multiple programs operated by Defendant Selfhelp. (Defs.' 56.1 Statement of Facts ("Defs.' 56.1") ¶¶ 5, 7, ECF No. 38-57.) RHSP serves many Holocaust survivors from the former Soviet Union, some of whom practice Judaism. (*Id.* ¶¶ 6, 12.) Each month, RHSP hosts several "coffee house" events, at which it provides food, music, and social interaction to its clients. (*Id.* ¶ 77.) Plaintiff began working as a social worker for RHSP on July 3, 2017. (*Id.* ¶ 49.) Miriam Khachatryan, the Director of RHSP, interviewed Plaintiff and made the decision to hire him. (*Id.* ¶¶ 17, 20, 44.) Once hired, Plaintiff was subject to a six-month probationary period. (*Id.* ¶¶ 48, 49.) Fakhriniso Woolley was Plaintiff's immediate supervisor during the entire term of Plaintiff's employment with RHSP. (*Id.* ¶ 50.) Plaintiff's employment was terminated on October 17, 2017. (*Id.* ¶ 244.) Both Woolley and Khachatryan were involved in the decision to terminate Plaintiff's employment. (*Id.* ¶¶ 242, 247.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court conducts a de novo review of those portions of a report and recommendation to which a party submits a timely objection. 28 U.S.C. § 636(b)(1)(C). To accept those portions of the report to which no timely objection has been made, "the district court 'need only satisfy itself that there is no clear error on the face of the

2

record.'" *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001)).

Here, as the R&R is on a motion for summary judgment, the Court reviews de novo the objected-to portions of the R&R under the summary judgment standard. Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted),

including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* at 50 (internal quotation marks omitted).

## DISCUSSION

Plaintiff objects to 31 portions of the R&R, the lion's share of which are findings of fact. (*See* Pl.'s Objs., Nos. 1–17, 19–24, 26–27, 29–30.) Plaintiff also objects to several legal findings. (*See id.*, Nos. 18, 25, 28, 29, 31.).

### I. Title VII Retaliation

Judge Kuo found that Plaintiff failed to establish a prima facie case of retaliation. In making this determination, Judge Kuo concluded that the activities Plaintiff engaged in—advocating on behalf of Defendants' clients—are not, as a matter of law, protected activities that can serve as the basis for a retaliation claim. (R&R at 21–23.) According to Plaintiff, this was error. (Pl.'s Objs., Nos. 18, 25, 29.) Specifically, Plaintiff argues that Judge Kuo erred in finding that Plaintiff's advocacy on behalf of musician Mendy Wax was not protected activity.[1] (*Id.* at Nos. 18, 29.) Moreover, according to Plaintiff, Judge Kuo altogether ignored that Plaintiff's "informal complaint about kashrut issues at coffee houses" was a protected activity. (*Id.*, No. 25.)

---

[1] Plaintiff also objects to Judge Kuo's finding that Plaintiff "[did] not claim that Wax applied for employment with Defendants." (*Id.*, No. 29.) Plaintiff offers no evidence in support of this objection and it is therefore without merit. Furthermore, Plaintiff asserts that musicians hired to perform at RHSP social events are considered independent contractors. (*Id.*) As Defendants note, this assertion defeats any argument that Defendants' failure to hire the musician was an unlawful employment practice under Title VII. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) ("Title VII and the NYHRL cover 'employees,' not independent contractors.").

4

With respect to Plaintiff's advocacy on behalf of musician Mendy Wax, Judge Kuo correctly found that Plaintiff's conduct was not protected activity. This is so, because an employee's complaint about an employer's discriminatory conduct toward non-employees is not protected activity under Title VII.[2] *See Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134–35 (2d Cir. 1999) (officer's complaints about other officers' use of racial slurs and suspicionless stops of minorities did not constitute "protected activity" for Title VII purposes because conduct was directed at members of the public, not at employees, and therefore could not reasonably be considered an employment practice). That is, conduct directed at members of the public cannot reasonably be considered an employment practice. *Id.*

The same reasoning applies to Plaintiff's informal complaint to Khachatryan about kashrut issues at coffee houses. In her recitation of the facts, Judge Kuo acknowledged that Plaintiff "discussed with Khachatryan an issue he observed with staff not using the proper utensils to ensure full observance of the laws of kashrut (keeping kosher), but that he did not 'feel that [Khachatryan] was going to make any changes.'" (R&R at 11 (citing Defs.' 56.1 ¶ 121).) Although Judge Kuo did not specifically address this complaint in her analysis of Plaintiff's retaliation claim, it is clearly an instance of "advocating on behalf of clients" that Judge Kuo found did not constitute protected activity. (R&R at 20–23.) In an effort to avoid dismissal, Plaintiff argues that the issues with kashrut observance during the coffee houses

---

[2] Plaintiff also objects to Judge Kuo's factual finding that Plaintiff did not raise with Defendant's concerns regarding the scheduling of client events on or around Shabbat or Jewish holidays. (Pl.'s Objs., No. 21.) Plaintiff argues that he did raise these concerns, because he documented clients' complaints about these scheduling issues in his case notes. (*Id.*) Regardless of whether they were documented, these concerns relate to Plaintiff's complaints about Defendants' cultural sensitivity toward clients, not employees, and would not constitute protected activity even had they been raised with Defendants.

5

affected not only observant clients, but also employees, because employees ate the food that was ordered for the coffee houses. (Pl.'s Aff. Opp'n Defs.' Mot. Sum. J. ("Pl.'s Aff.") ¶ 94–95, ECF No. 43; Pl.'s Rule 56.1 Statement ("Pl.'s Opp'n 56.1") ¶ 120, ECF No. 44; Pl.'s Objs., No. 25.) That Plaintiff argues this now is of no moment. Plaintiff has failed to adduce any evidence that he made this point at the time he raised these concerns with Khachatryan.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that he held a good faith, reasonable belief at the time the complaint was made that the complained-of conduct constituted an unlawful employment practice. *See Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (affirming district court's finding that plaintiff did not prove a good faith, reasonable belief that the complained-of activity was an unlawful employment practice, where the essence of the complaint, at the time it was made, was directed at something that was not properly within the definition of an unlawful employment practice). Here, Plaintiff does not argue that he framed his complaint in terms of how the kashrut issues affected Plaintiff or any other RHSP employee. Nor does he argue that, at the time of his complaint, he held a good faith, reasonable belief that he or any other RHSP employee had been the victim of religious discrimination due to the kashrut issues he observed at coffee houses. Indeed, Plaintiff himself stated, and the record supports, that Plaintiff's complaints generally concerned client-facing issues, not issues affecting Plaintiff or other employees. (Decl. of Diane Krebs, Ex. AQ ("OG Dep.") at 220:25–221:7, ECF No. 38-2 ("I complained about major issues that I thought would be helpful to improve the program in general, not the things that concerned myself.").) Plaintiff has failed to meet his de minimis burden of showing that his complaints on

6

behalf of clients constituted protected activities.[3]  Having found that Plaintiff did not engage in protected activity, no claim for retaliation can lie.

Plaintiff also argues that Judge Kuo did not consider certain adverse employment actions purportedly taken in retaliation for his complaints about kashrut issues at coffee houses.  (Pl.'s Objs., No. 25 (Plaintiff "believes that he was removed from the kitchen, given increased responsibilities, blamed for insubordination (staying in the kitchen), 'poor performance' and fired in retaliation for his opposition to perceived discrimination after speaking with Khachatryan about violation of laws of kashrut").)  However, because the Court has already found that Plaintiff did not engage in a legally cognizable protected activity, any ensuing "adverse employment action" is likewise not actionable in the context of Plaintiff's retaliation claim.[4]

## II.   Hostile Work Environment

Plaintiff objects to Judge Kuo's finding that Plaintiff did not bring a claim for hostile work environment.  (Pl.'s Objs., No. 31.)  A review of the complaint in this action confirms Judge Kuo's conclusion.  Plaintiff, who, again, is proceeding pro se, utilized the court's form

---

[3] For the same reasons, Plaintiff has failed to meet his de minimis burden of demonstrating Defendants' knowledge of any "protected activity," which is a required element of a retaliation claim.  "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107–08 (2d Cir. 2011) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).  Thus, to establish a claim for retaliation based on an informal complaint, that complaint must have been presented in a way that the employer could reasonably have understood that it was directed at conduct prohibited by Title VII.  *See e.g.*, *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014) (absent any express statements indicating that female employee was protesting an order because it was discriminatory based on her race or gender, plaintiff's protest "could not have put [d]efendants on notice that she felt the order to be discriminatory, and her protest is therefore not protected by the antiretaliation protections of Title VII").  On this record, no reasonable juror could find that Plaintiff's employer would have understood Plaintiff's informal complaint regarding kashrut issues at coffee houses to be protected activity.

[4] Having determined that Plaintiff failed to make out a prima facie claim for retaliation, the Court need not consider Plaintiff's objections regarding whether Defendants offered a non-retaliatory reason for Plaintiff's termination.  (*See, e.g.*, Pl.'s Objs., No. 7 (stating, without support, that Plaintiff was required to attend only two coffee houses per month, not three).)

7

Employment Discrimination Complaint. (*See* Compl., ECF No. 1.) Therein, Plaintiff checked boxes identifying the adverse employment actions Defendants took against him as "terminat[ing] his employment" and "retaliat[ing] against [him]." (*Id.* at 5.) Conspicuously, Plaintiff did not check the box indicating that Defendants harassed him or created a hostile work environment, which is clearly identified and appears on the same page as the boxes Plaintiff checked for termination and retaliation. (R&R at 34, n.6 (citing Compl. at 5).) For that reason, perhaps, Plaintiff does not dispute that he failed to indicate on the form that he was pursuing a claim for hostile work environment. Rather, Plaintiff argues that he asserted a hostile work environment claim in his 56.1 Statement in support of his opposition to Defendants' motion for summary judgment and at his deposition. (Pl.'s Objs., No. 31 (citing Pl.'s Opp'n 56.1 ¶¶ 168, 177, 187, 239).) This is insufficient.

A litigant, even a pro se one, may not assert new claims in opposition to a motion for summary judgment. *See Avillan v. Donahoe*, 483 F. App'x. 637, 639 (2d Cir. 2012) (summary order) (holding that the district court did not err in disregarding allegations the pro se plaintiff raised for the first time in response to the defendant's motion for summary judgment); *Shah v. Helen Hayes Hosp.*, 252 F. App'x. 364, 366 (2d Cir. 2007) (summary order) (holding that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint" (citation omitted)). Nor may a party properly raise new claims in the form of objections to a report and recommendation. *See Garcia v. Griffin*, No. 16-CV-2584, 2019 WL 4917183, at *4 (S.D.N.Y. Oct. 4, 2019) ("[N]ew claims may not be raised properly at this juncture, so any new claims, presented in the form of, or along with, objections, should be dismissed." (internal quotation marks omitted)). Plaintiff did not assert a hostile work

8

environment claim in his complaint and did not amend his complaint to include such a claim. Accordingly, he cannot raise it now.

Even if Plaintiff had asserted a hostile work environment claim, it would not have been sustained on this record. To establish a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris*, 510 U.S. at 21). Notably, the "severe or pervasive" standard "has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* (quotation marks and citation omitted). In assessing a hostile work environment claim, courts review the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010) (quoting Harris, 510 U.S. at 23).

Here, Plaintiff's unasserted hostile work environment claim is premised on three categories of conduct: comments by co-workers that Plaintiff overheard, comments by co-workers that Plaintiff heard about from a third party, and comments to Plaintiff by his supervisors. (Pl.'s Objs., No. 13 (citing Pl.'s Opp'n 56.1 ¶¶ 175, 176); *id.*, No. 14; *id.*, No. 31 (citing Pl.'s Opp'n 56.1 ¶¶ 168, 177, 187, 239).) An employer is liable under Title VII to a victimized employee when a supervisor "with immediate (or successively higher) authority" creates an actionable hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775,

777 (1998). "[W]hen the hostile environment is created by a coworker or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, the employer is liable only if it has 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997) (citation omitted). Plaintiff fails to establish Defendants' liability in relation to comments by coworkers that Plaintiff overheard.

Specifically, Plaintiff testified that he heard a co-worker say to other co-workers that, "[t]hey get divorced to get more benefits" and "[t]hey used to complain in the Soviet Union. Now they complain here." (OG Dep. 286:4–289:3.) Plaintiff does not know to whom the co-worker was referring but guessed that it was one of her clients. (*Id*. 287:2–288:12; 290:21–291:23.) He heard this same co-worker say Jews cheat on their wives because they are always pregnant and that this cheating takes the form of staring at women at bathhouses. (*Id*. 292:5–8.) Plaintiff also testified that when social workers received gifts of kosher food from clients and shared the food at the office, some would say, "Kosher food? No way." (*Id.* 219:23–220:8.) Co-workers also referred to kosher food as "garbage" and "disgusting." (Pl.'s Opp'n 56.1 ¶ 168; Pl.'s Aff. ¶ 89.) Sometimes they looked at Plaintiff in a hostile manner when they said this. (Pl.'s Opp'n 56.1 ¶ 168; OG Dep. 220:20–22; Pl.'s Aff. ¶ 89.)

The co-workers who made these purportedly harassing statements were not Plaintiff's supervisors and did not have any decision-making authority over him. (Pl.'s Aff. ¶ 177; OG Dep. 221:8–222:18.) Plaintiff did not complain about these statements to anyone at Selfhelp or RHSP and does not proffer evidence that anyone in a supervisory role at Selfhelp or RHSP was

10

aware of these comments.[5]  (OG Dep. 221:3–7.)  Nor does Plaintiff demonstrate, or even argue, that Defendants failed to provide a reasonable avenue for complaint.  Defendants, however, proffered uncontroverted evidence that multiple avenues for complaint were available to Plaintiff.  (*See* Parauda Aff. Supp. Defs.' Mot. Sum. J. ¶ 7, ECF No. 38-39; *id.*, Ex. AA (Selfhelp's internal complaint policy), ECF No. 38-41.)  Accordingly, these comments by co-workers do not support a hostile work environment claim.  *See, e.g.*, *Kennedy v. J.P. Morgan Chase & Co.*, 325 F. Supp. 2d 401, 410 (S.D.N.Y. 2004) (employer cannot be held liable for coworker's conduct, even if offensive, where employer provided avenues for complaint but the plaintiff never reported the conduct).

Nor can comments made by Plaintiff's supervisors to other employees support a hostile work environment claim.  (Pl.'s Objs., No. 14.)  According to Plaintiff, Tsekhanskaya told Plaintiff that Khachatryan told Tsekhanskaya that descendants of Holocaust survivors are not entitled to anything.  (OG Dep. 269:21–270:7.)  The record does not reflect that Khachatryan made this comment to, about, or in the presence of Plaintiff.  This is fatal to Plaintiff's claim.  As the Second Circuit has held, "Title VII's prohibition against hostile work discrimination affords no claim to a person who experiences it by hearsay." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 182 (2d Cir. 2001); *see id*. at 190 (holding that a plaintiff who was not herself the target of the alleged harassment, was not present when the alleged harassment occurred, and did not know about the alleged harassment while it was ongoing, failed to prove a hostile work

---

[5] As Defendants point out, Plaintiff himself confirmed that he did not complain about conduct directed at him. (Defs.' Resp. to Pl.'s Objs. at 25, ECF No. 53.)  Based on his bad experience at a different job ten years prior, Plaintiff felt that complaining could jeopardize his employment.  (Defs' 56.1 ¶ 235.)

11

environment claim). Indeed, the Second Circuit explicitly rejected the idea of expanding employer liability for a hostile work environment to allow for recovery by an employee "made distraught by office gossip, rumor, or innuendo." *Id*. In other words, an employee cannot prevail on a hostile work environment claim that is premised on conduct the employee did not himself witness. For this reason, Khachatryan's comment to Tsekhanskaya, heard secondhand by Plaintiff, cannot support a hostile work environment claim.[6]

What's left in support of Plaintiff's hostile work environment claim are a handful of comments by Plaintiff's supervisors, Khachatryan and Woolley. Plaintiff testified that Khachatryan made several generalized comments about RHSP clients that Plaintiff felt were insensitive toward Jewish people, and that she later made a dismissive comment about Kosher food.[7] (OG Dep. 258:9–260:2–7, 268:13–14; 269:9–10, 269:14–20; *see also* Pl.'s Objs., No. 9 (citing Pl.'s Opp'n 56.1 ¶ 162).) Plaintiff further testified that Woolley sold Plaintiff a bottle of kosher wine and announced her "sales success" in an email to the entire office staff, which was humiliating for Plaintiff. (Pl.'s Objs., No. 11; Pl.'s Aff. ¶ 99; OG Dep. 203:3-16, 207:12-19.) At some point, Woolley also told Plaintiff that the reason RHSP serves Kosher food at social events

---

[6] The same reasoning applies with full force to Plaintiff's sworn statement that he was told by Tsekhanskaya that supervisors mentioned Plaintiff's name in a negative way during a birthday lunch party that Plaintiff did not attend. (Pl.'s Opp'n 56.1 ¶ 170; Pl.'s Aff. ¶ 85.)

[7] All but one of Khachatryan's comments was made during a meeting at which Plaintiff and Khachatryan discussed Plaintiff's concerns about whether the selection of musical performers at the coffee houses was culturally insensitive to RHSP clients. (OG Dep. 253:12–254:4.) During this meeting, Khachatryan said that "[t]hey lost their faith after the Holocaust." (*Id.* 258:8–20.) Khachatryan also told Plaintiff that, on one occasion, a client fainted at a social event and that the other attendees continued to eat. (*Id.* 260:5–7.) Khachatryan also said that RHSP clients "don't even know what Tu Bishvat [a Jewish holiday] is" and that some RHSP clients eat pork. (*Id.* 268:12–269:11.) On a separate occasion, Plaintiff suggested on an email chain with colleagues that he would bring a kosher food option for the end of summer party for employees. (*Id.* 111:18–25.) Khachatryan responded to the email chain that she did not care about food, she cared about the party. (*Id.* 111:24–25.) Specifically, Khachatryan said she did not care about food options one, two, and three, only one of which was Plaintiff's kosher suggestion. (*Id.* 438:19–24; 208:11–14; 438:19–24.)

12

for clients is because the events take place in a Jewish Center.  (OG Dep. 202:7–14, 204:21–206:7, 310:21–311:21.)

Plaintiff believes this comment was "biased, Anti-Jewish and showed little respect to observant clients and [P]laintiff, who was observant as well."  (Pl.'s Objs., No. 12.)  Be that as it may, Plaintiff has failed to demonstrate that Woolley and Khachatryan's conduct created an objectively abusive environment.  Although Plaintiff interprets Woolley and Khachatryan's comments as culturally insensitive, they are certainly not sufficiently severe to be cognizable.  Nor are these comments, made over the course of Plaintiff's three-and-a-half-month employment, sufficiently pervasive to rise to the level of a hostile work environment.  *See, e.g.*, *Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 403 (S.D.N.Y. 2007) (granting summary judgment in favor of employer and holding that three or four instances over three-month period did not create hostile work environment where instances were not objectively severe).  Thus, even if Plaintiff had asserted an action for hostile work environment, it would fail.[8]

### III. Hearsay

Plaintiff argues that Judge Kuo erred by concluding that Tsekhanskaya's statements about her experiences working for Defendants were hearsay and could not be relied upon to oppose a motion for summary judgment on Plaintiff's age discrimination claim.  (Pl.'s Objs., No. 28 (citing R&R at 36).)  Plaintiff argues that such statements are not hearsay because the

---

[8] Although Plaintiff does not explicitly seek leave to amend, he suggests in his objections that "perhaps, [P]laintiff should be allowed to amend his complaint with respect to [a hostile work environment claim]."  (Pl.'s Objs., No. 31.)  A request for leave to amend, made in response to motion for summary judgment, may be denied as futile "when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)."  *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).  Accordingly, Plaintiff's request for leave to amend the complaint to assert a hostile work environment claim based on the "incidents of harassment and hostile work environment" alleged at his deposition and in his Rule 56.1 Statement is denied.

13

statements were contained in a written "addendum" that was produced to Defendants during discovery and mediation.[9] (*Id*.) Hearsay can be a difficult concept even for experienced counsel. Plaintiff misunderstands the rule.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid 801. Hearsay statements may be oral or written, but in any event are not generally admissible at trial. This is so, because hearsay statements are considered presumptively unreliable. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 232 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) ("The hearsay rule ordinarily prohibits the admission of out-of-court statements by declarants on the theory that cross-examination can help test for these four classes of error, thus allowing the fact-finder to weigh the evidence properly and to discount any that is too unreliable."); *In re Drake*, 786 F. Supp. 229, 233 (E.D.N.Y. 1992) ("The hearsay rule is designed to prevent the admission of unreliable hearsay but to permit through its many exceptions the admission of reliable hearsay." (quoting *Ferrier v. Duckworth*, 902 F.2d 545, 547 (7th Cir.), *cert. denied*, 498 U.S. 988 (1990))). Of course, there are hearsay exceptions, such as excited utterances, present sense impressions, and statements made for medical diagnosis or treatment. *See* Fed. R. Evid 803. But none of the exceptions apply here.

Instead, here, Tsekhanskaya's statements that are the subject of Plaintiff's objections are unquestionably inadmissible hearsay. This is so whether the "addendum" was produced to

---

[9] The "addendum" Plaintiff references was not part of the record at summary judgment. Plaintiff explained that this "addendum" is part of a complaint that Tsekhanskaya purportedly intended to file in her own court case had she initiated one, which, according to Plaintiff, she did not. (OG Dep. 322:10–14.) Although Plaintiff produced this document during discovery, it was not filed with the complaint or with any of the parties' summary judgment submissions and was therefore not before Judge Kuo. In any event, the "addendum", which Plaintiff now attaches to his objections as Exhibit T, is unsworn and therefore is not proper evidence at summary judgment. *See Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) ("[U]nsworn statements are not admissible to controvert a summary judgment motion.").

Defendants during discovery or not. Tsekhanskaya's statements, whether made orally to Plaintiff or in an unsworn document, are "out of court statements." And, Plaintiff offers Tsekhanskaya's statements to prove that Tsekhanskaya experienced discrimination based on her age while working for Defendants.[10] Accordingly, Tsekhanskaya's statements are hearsay and would not be admissible at trial.

Hearsay that would not be admissible at trial is likewise not competent evidence on a motion for summary judgment. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (plaintiff's statement as to what he "was told" was hearsay that would not be admissible at trial and was therefore not sufficient evidence to create a genuine issue of fact at summary judgment). Because Judge Kuo correctly deemed the statements to be hearsay, Plaintiff's objection on this point is overruled.

### IV.    Plaintiff's Remaining Objections

Plaintiff's remaining objections do not provide a basis to disrupt Judge Kuo's legal conclusions. A number of Plaintiff's objections lack citations to, or are unsupported by, evidence in the record. (*See, e.g.*, Pl.'s Objs., No. 6 ("All [Plaintiff's] clients obtained public, and reparation benefits they were entitled to before cases were assigned to him."); *id.*, No. 7 (claiming that Plaintiff was required to attend only two coffee houses per month, not three); *id.*, No. 21 (claiming that Plaintiff documented in his case notes and discussed with Woolley his

---

[10] In his sworn affidavit, Plaintiff testified that Tsekhanskaya "complained" that Khachatryan was trying to root out Tsekhanskaya's age during an interview and that Tsekhanskaya was constantly criticized for not being able to keep up with her supervisor's fast walk, and for not maintaining a young look or wearing makeup. (Pl.'s Aff. ¶ 100.) However, as Plaintiff acknowledged at his deposition, Plaintiff does not have any personal knowledge of Tsekhanskaya's experiences of age discrimination that are described in the R&R. (OG Dep. 144:5–12; 326:24–327:03.) Indeed, Plaintiff does not even testify that Tsekhanskaya told him of these experiences. Rather, Plaintiff relies on what is described in Tsekhanskaya's "addendum." (*See id.*; Pl.'s Objs., Ex. T ¶¶ 23–25.)

advocacy on behalf of clients regarding trips scheduled at times observant clients could not attend).) Others are based on statements of fact that Plaintiff did not properly dispute in his response to Defendants' 56.1 statement and that Judge Kuo therefore deemed admitted. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). For example, Plaintiff objects to Judge Kuo's characterization of RHSP as operating the oldest and largest program for Holocaust survivors in North America but does not cite to any evidence regarding the size or scope of RHSP's program. (*See id.*, No. 1.) And, Plaintiff explicitly deemed this fact as admitted in his response to Defendants' 56.1 statement. (*Compare* Defs.' 56.1 ¶ 5, *with* Pl.'s Opp'n 56.1 ¶¶ 2–11.) In any event, the scope of RHSP's program is immaterial to Defendants' motion. Many of Plaintiff's other objections have no bearing on the Court's analysis and are therefore irrelevant here. (*See, e.g.*, Pl.'s Objs., Nos. 2, 3, 4, 5, 6, 8, 9, 10, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 26, 27, 30.). For example, Plaintiff objects to Judge Kuo's finding that Khachatryan knew Plaintiff was an Orthodox Jew when she made the decision to hire him. (*Id.*, No. 2.) Judge Kuo relied on this finding only with respect to the "same actor" inference, which is not dispositive. Indeed, Judge Kuo found that, regardless of the presumption, Plaintiff failed to establish a prima facie case of discrimination. (R&R at 31–34.) Because Judge Kuo's decision did not rest on this presumption, Plaintiff's objection on this point is not material to the Court's analysis. Similarly, Plaintiff objects to Judge Kuo's factual finding that "Plaintiff states that his co-worker Tsekhanskaya told him that Khachatryan said descendants of Holocaust survivors are not entitled to anything" (Pls.' Objs., No. 14; R&R at 8.) The bases for Plaintiff's objection—that Tsekhanksaya considered the comment Anti-Jewish and

16

that the statement is not hearsay—have no bearing on Judge Kuo's conclusion that comments made to or about third parties are not a proper basis for a Title VII claim. (*See* R&R at 32.)

Plaintiff is correct that Judge Kuo erroneously wrote "December" instead of "October" in stating that, "[a]ccording to Defendants, by the beginning of December, they 'received more complaints [about Plaintiff] than the average worker . . . .'" (R&R at 23–24.) Correcting this error, however, does not alter the outcome.

## CONCLUSION

The Court has reviewed the portions of the R&R to which Plaintiff did not object for clear error and, finding none, hereby ADOPTS Judge Kuo's R&R in its result and to the extent consistent with the Court's analysis herein.[11] Accordingly, Defendants' motion for summary judgment is GRANTED in its entirety. Plaintiff's request for leave to amend the complaint to assert a hostile work environment claim is DENIED. The instant action is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York  
      March 29, 2022

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge

---

[11] Because the Court has found it unnecessary to reach the question of whether Defendants offered a legitimate non-discriminatory or non-retaliatory reason for any adverse employment action, the R&R is not adopted as to those points.